IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
            v.                    )
                                  )    CRIMINAL NO. 04-10201-MLW
MIGUEL REYES                      )

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY

The United States respectfully submits this response to defendant's Motion for Discovery in this case.

Background

**The case**

The defendant Miguel Reyes is charged in a single count indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1). The charge stems from a June 2, 2004, transaction in which the defendant Reyes sold a loaded .380 Smith & Wesson pistol to a cooperating witness, (hereafter CW). The transaction was recorded on video and audio. As recounted in the complaint, search warrant affidavit, reports, and in other discovery produced to the defendant, the CW informed ATF and New Bedford Police in May 2004 that the defendant told the CW that he had two .380 pistols and would sell one of them to the CW but wanted to keep the other one for himself. On May 28, 2004, the CW met with Reyes and Reyes told him that he (Reyes) would sell the CW a .380 pistol for $400. On June 2, 2004, the CW called Reyes and Reyes instructed the CW to come to his residence at 315

Summer Street, in New Bedford.  This call was made in the presence of ATF Special Agent Stephanie Schafer, but was not recorded because of feedback on the line when the monitoring equipment was attached.  The CW was searched, given $400 and wired for electronic monitoring and recording.  The CW was followed to 315 Summer Street, where he received a telephone call from Reyes asking where he was.  The CW told Reyes he was right outside and a short while later Reyes was observed and videotaped leaving 315 Summer Street and entering the undercover vehicle to meet with the CW.  The conversation could be heard over the wire and was recorded.  Reyes told the CW that he could not tell anyone that Reyes sold him the gun, and that he could get 15 years in prison if he got caught. Reyes described the gun as brand new with a "clip" that held 5 rounds of ammunition.  Reyes told the CW that it was the kind of gun that doesn't jam.  Reyes also indicated that he had more ammunition for the gun, but couldn't find it.

<u>Defendant's Requests</u>

**Information concerning the firearm**

The defendant has asked for discovery relating to the origin of the firearm, to include "any oral or written statements made by an (sic) person concerning ownership of the firearm."  The government has produced a trace report of the firearm showing that it was purchased in April 2001 by Eric Offley.  With respect to the requests for statements of anyone concerning ownership of the

firearm, the United States has agreed to produce *Jencks* material of anticipated government witnesses at least 7 days before trial as contemplated by Local Rule 116.2(B)(2).[1]  Although the government does agree to early disclosure of witness statements as contemplated by the rule, production of witness statements prior to their testimony, is not, of course, required by the Jencks Act. 18 U.S.C. §3500(b); *United States v. Neal*, 36 F.3d 1190, 1197 (1st Cir. 1994)(defendant entitled to statements of government witnesses only after witnesses have testified on direct examination.)  Except to the extent required by *Brady/Giglio* and progeny, the defendant is not entitled to statements of non-witnesses at all.  *See United States v. Blais*, 98 F.3d 647, 651 (1st Cir. 1996)(Jencks Act did not require production of complainant's statement to police because not a witness and did not testify.)  Additionally, there is no statutory or constitutional obligation to disclose the identities of prosecution witnesses before trial. *United States v. Bello-Perez*, 977 F.2d 664, 670 (1st Cir. 1992); *United States v. Reis*,

---

[1]The government notes that it has produced material that is either not required to be produced, or not required to be produced at this time, including the following:

In addition to providing a copy of the search warrant, affidavit, and return, the government also disclosed a Report of Investigation (ROI) of  ATF Special Agent Angelo Thurman relating to the arrest of the defendant and the execution of the search warrant; the ROI of Agent Schafer relating to the undercover purchase of the firearm; and the ROI of Agent Thurman relating to the interview of Wendy Britto, the defendant's girlfriend.

788 F.2d 54, 58 (1st Cir. 1986); *United States v. Barrett*, 766 F.2d 609, 617 (1st Cir.1985).

**Information concerning the cooperating witness**

The bulk of the defendant's requests are for information about the CW in this case and basically fall into the following categories: criminal history, promises, rewards or inducements the CW received in connection with this case and for any other investigations he may have been involved in, and CW misconduct.

**Criminal Record**

The government produced to the defendant the Massachusetts Board of Probation report and Triple III criminal record of the CW as well as a copy of the CW's Michigan record retrieved from a CJIS inquiry. Although the defendant's motion asks for an unredacted record[2] and "any other information" about the CW's prior record "including court documents and police reports," counsel's December 23, 2004, discovery request letter stated that counsel intended to make the request herself for "papers from the courts" in which the CW appeared. The government notes that the Triple III record identifies the name, the date, the county, the tracking number, and the charges brought against the CW in Michigan and submits that counsel can certainly request the documentation from the state court based on the information in her possession. Additionally,

---

[2]Only the CW's date of birth and social security number were redacted.

4

the Massachusetts BOP shows the date, court, and docket number of all of the Massachusetts cases. Again, the defense can certainly obtain whatever records it seeks with the information provided on the report. *See United States v. Bender* 304 F.3d 161, 164 (1st Cir. 2002)("Neither the relevant Supreme Court precedent under *Brady* nor our decision in *Osorio* requires a prosecutor to seek out and disclose exculpatory or impeaching material not in the government's possession."; "*Brady* applies to material that was known to the prosecution but unknown to the defense.")

**Promises, Rewards and Inducements**

**A. Housing**

In automatic discovery, the government advised the defendant that the CW has been staying at an apartment free of charge since about May 2004, and that one or more law enforcement officials assisted the CW in obtaining this housing. The government understands, and advised the defendant, that the value of the housing is about $500 per month. The defendant states that it is his "unsubstantiated belief" that the CW was evicted from public housing because of criminal conduct and that the government intervened on his behalf and "persuaded the public housing authority to break its rules" and provide housing to him. Although continuing to make inquiry concerning this allegation, the government advises that it has no information that the CW was

evicted from his prior housing for any reason other than financial difficulties.

The defendant seeks more information concerning this housing, including "what efforts were made, by whom, and why." This level of detail is beyond what the rules or case law require. Indeed, Local Rule 116.2(B)(1)(c) requires only disclosure of whether a reward or inducement has been given and a "copy of any promise, reward, or inducement reduced to writing." The defendant has been advised of the fact that the CW has been housed free of charge since approximately May 2004 in an apartment valued at about $500 per month. There is no writing memorializing this benefit of which the government is aware.

**B. Payments**

The government produced payment receipts for the $900 payments to the CW made in connection with this case as well as the receipt for the $400 buy money. These receipts detail the date received, the amount disbursed, the method of payment (cash), and the reason for the payment—either subsistence, operating expenses, or miscellaneous. The government declined to produce, and objects to producing, any other internal ATF documents relating to the request for and/or disbursement of these funds. The defendant has been advised of, and provided receipts for, the amount paid to the CW for his involvement in this case. That is ample information to

cross-examine the CW about his possible motive or bias in this matter.

The defendant also requests "all documents pertaining to his [the CW] becoming an informant and his record as an informant." It is unclear to the government what the defense is seeking here. To the extent this request is seeking documents which merely describe the investigation, interaction with the CW and cooperation activities of the CW, the government objects to production. If what the defendant is seeking, instead, are any records relating to any failure of the CW to provide truthful information or to abide by informant rules, or the like, such information, if any exists, will be disclosed pursuant to the timing requirements of Local Rule 116.2(B).

**C. Uncharged Conduct**

As noted, the government disclosed as a potential promise, reward or inducement, the fact that the CW was observed selling apparently stolen radios from his car in New Bedford and thereafter, became an informant with the ATF. Although the government submits that the following information is not a promise, reward, or inducement relevant to this case, the government also has advised the defendant that prior to becoming a CW with the ATF, a 2003 misdemeanor marijuana possession charge against the CW was dropped in exchange for his cooperation with the New Bedford Police

Department. The CW received no remuneration for this assistance which was, as noted, prior to the CW becoming a CW with the ATF.

The defendant has asked for documents relating to the uncharged conduct. As the government previously advised the defendant, there are no reports relating to the observation of the CW selling stolen radios. The government agrees to produce a New Bedford Police Department Offense Report relating to the CW's possession of approximately 8 grams of marijuana. The government intends to redact the CW's date of birth and social security number as well as the names of individuals other than law enforcement mentioned in the report. *United States v. Si*, 343 F.3d 1116, 1123 (9th Cir. 2003)(government properly allowed to withhold reports of informant's activities in other investigations and to redact the names of others involved in informant's prior criminal activities.)

**D. Other Investigations**

The government also has advised the defendant that the CW has been paid a total of $2,680 —which includes the $900 in connection with this case—by ATF for his assistance with a number of investigations. Disclosure of the details of these investigations and the nature of the CW's involvement is not required. *United States v. Brimage*, 115 F.3d 73, 78 (1st Cir. 1997)(upholding conclusion that reports of informant's activities in other, unrelated investigations, immaterial); *United States v. Si*, 343 F.3d 1116, 1123 (9th Cir. 2003)(noting that reports of informant's

8

unrelated activities, although of some benefit to show motive to testify, were not material where the defendants had opportunity to impeach the informant with regard to that motive.)

The defendant also requests information relating to other investigations the CW may have assisted in for "any government agency." The government should not be required to make a national, state by state, or indeed, county by county inquiry to determine whether the CW has worked for "any government agency" and to disclose testimony given, or rewards or inducements made. This request is overbroad and should be denied. *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998)("the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'") (citations omitted); *see also Bender,* 304 F.3d at 164 (duty to find evidence known to members of the prosecuting team, "including police investigators working for the prosecution."); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)(no duty on prosecutor "to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue.")

**CW Misconduct**

The defense also has asked for information concerning the CW's record as an informant, to include "any suspected or confirmed misbehavior including whether the informant was selling or abusing drugs" and for "any misbehavior" of the CW in connection with any case on which he has worked for "any government agency." As noted above, the scope of the request is overbroad, requiring a nationwide inquiry, to which the government objects. Aside from that, the government will, of course, consistent with its *Giglio* obligations produce information, of which it is aware and after diligent inquiry of the prosecution team becomes aware, according to the timing requirements of Local Rule 116.2(B)(2).

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Sandra S. Bower
SANDRA S. BOWER
Assistant U.S. Attorney
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
617-748-3184

10